```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------- X          C/M
                                                            :
UNITED STATES OF AMERICA,                                   :   **MEMORANDUM**
                                                            :   **DECISION AND ORDER**
                                                            :
            - against -                                     :   01-cr-922 (BMC)
                                                            :   20-cv-2796 (BMC)
                                                            :
DANIEL LUGO,                                                :
                                                            :
                        Defendant.                          :
                                                            :
----------------------------------------------------------- X
```

**COGAN**, District Judge.

Presently before me is defendant's motion for habeas corpus relief under 28 U.S.C. § 2255, in which he seeks to vacate his conviction based on United States v. Davis, 139 S. Ct. 2319 (2019). Defendant was convicted of a conspiracy to commit murder in aid of racketeering under 18 U.S.C. § 1959(a)(5). Judge Weinstein, to whom this case was previously assigned, sentenced him on October 29, 2002 to 120 months' custody, the statutory maximum, and to a period of supervised release of 5 years. Defendant was released from custody on September 1, 2017 and is still serving a term of supervised release.[1]

Because Davis does not impact defendant's § 1959(a)(5) conviction, his motion for habeas corpus relief is is denied.[2]

---

[1] Defendant's release from prison does not moot his § 2255 motion. "Physical confinement is not necessary to satisfy the 'in custody' requirement; a petitioner who is on parole or serving a term of supervised release is 'in custody' for the purposes of the federal habeas corpus statute." Abimbola v. United States, No. 04-cv-1518, 2005 WL 5067864, at *2 (E.D.N.Y. April 15, 2005) (citing Scanio v. United States, 37 F.3d 858, 860 (2d Cir. 1994)).

[2] In his instant motion, defendant does not challenge the remaining term of his supervised release. I previously denied defendant's motion for early termination of his supervised release in March 10, 2020. However, I noted that

**BACKGROUND**

Defendant's motion arises from his association with a criminal gang known as "the Family" which operated in New York City and Baltimore from the early 1980s and 2001. During this period, the Family's members and associates engaged in a wide range of criminal activity, such as selling drugs, committing shootings, and perpetrating fraud. In November 1998, a lieutenant in the Family's New York drug operations was murdered. The Family believed that members of a rival drug crew, the "Little Jus Crew," were responsible for the hit. Seeking revenge upon their rivals, the Family hired defendant and his brother, Richard Lugo, to find and murder Little Jus Crew members. The Lugo brothers told a member of the Family they knew where to locate a rival member, Lanny Dillard, and were paid around $4500 for their service.

On December 26, 1998, defendant participated in Dillard's murder. On that night, the Lugo brothers and other members of the Family learned that Dillard and other Lil Just Crew members were likely going to be at a party in Manhattan. The entourage met at a pool hall near the party location and searched for rival members, including Dillard. A Family associate reported that Dillard was at the party and the group waited for their target to leave the party. After stepping out of the party, Dillard, who was with his wife, family members, and friends, was shot multiple times and killed.

Soon after Dillard's murder, members of the Family gave defendant an envelope filled with cash, and the Lugo brothers were later paid more money. Defendant's brother was also compensated with heroin and two firearms. After a five-week trial before Judge Weinstein, a jury convicted defendant of conspiracy to commit murder in aid of racketeering, in violation of

---

defendant should renew his motion in March, 2021. I also stated that the Court would be favorably disposed of promptly terminating his remaining supervised release if defendant met certain conditions.

18 U.S.C. § 1959(a)(5). However, defendant was acquitted of Dillard's murder under 18 U.S.C. § 1959(a)(1) and the related firearms charge under 18 U.S.C. § 924(c)(3).

## DISCUSSION

A "crime of violence" is defined as a felony that: (A) has as an element the use, attempted use, or threatened use of physical force against the person or property of another; or (B) that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense. 18 U.S.C. § 924(c)(3). In Davis, the Supreme Court held that § 924(c)(3)(B) was unconstitutionally vague. 139 S. Ct. at 2336. Post-Davis, to qualify as a "crime of violence" under § 924(c), a crime must have "as an element the use, attempted use, or threatened use of physical force." Id. at § 924(c)(3)(A).

Defendant's Davis argument has two aspects: (1) that Davis compels me to vacate his conviction because it did not constitute a "crime of violence"; and (2) that New York Penal Law § 125.25(1) does not qualify as a "crime of violence" under § 924(c). Both of his arguments fail.

Davis has no bearing here because defendant was not convicted under the residual clause of § 924(c)(3)(B) (or, for that matter, under the residual clause in the Armed Career Criminal Act addressed in Johnson v. United States, 576 U.S. 591 (2015), or the 18 U.S.C. § 16(b) definition of aggravated felony addressed in Sessions v. Dimaya, 138 S. Ct. 1204 (2018)). Rather, defendant was convicted for violating a completely separate statute: Section 1959(a)(5).

This statute criminalizes "attempting or conspiring to commit murder or kidnapping" in aid of racketeering and imposes a statutory maximum term of imprisonment of 10 years for such conduct." See 18 U.S.C. § 1959(a)(5). However, it does not reference the terms "violent felony" or "crime of violence." Nor does the statute contain language otherwise similar to the residual

3

clause addressed in the three cases cited above. See Tran v. United States, No. 19-822, slip op. at *1 (2d Cir. Sept. 10, 2019) ("Subsections 1959(a)(1), (a)(5), and (a)(6) do not require that the murder, kidnapping, or assault satisfy the definition of 'crime of violence' and do not contain any language similar to the provisions at issue in Davis, Dimaya, or Johnson."). For this reason, courts have uniformly rejected the same argument defendant raises here:

> While Section 1959(a)(4) incorporates the phrase "crime of violence," Section 1959(a)(5), under which Ramirez was convicted of … makes no use of the term. Section § 1959(a)(5) criminalizes "attempting or conspiring to commit murder or kidnapping" in aid of racketeering activity. As a result, Johnson has no impact on Ramirez's Section 1959(a)(5) convictions.

Ramirez v. United States, No. 16-cv-5115, 2017 WL 44853, at *3 (S.D.N.Y. Jan. 3, 2017). See also United States v. Tisdale, No. 07-10142-05, 2020 WL 5203460, at *1 (D. Kan. Sept. 1, 2020) (noting that § 1959(a)(5) does not contain language similar to the residual clause addressed in Davis); Brown v. United States, No. 16-cr-122, 2020 WL 4226710, at *7 (D.S.C. July 23, 2020) ("Brown was not convicted under § 924(c), and thus Davis has no effect on his conviction or sentence" under § 1959(a)(5)); Franklin v. Ortiz, No. 18-cv-13713, 2020 WL 3638279, at *4 (D.N.J. July 6, 2020) ("Petitioner was convicted under § 1959(a)(5), which does not contain such ['crime of violence'] language" and thus "Davis does not apply in this case"). The same result is required here.

Defendant's related argument – that N.Y. Penal Law § 125.25(1) "does not qualify as generic murder" – also fails. The charge of which defendant was convicted read in part:

> In or about and between 1998 and October 2001, within the Eastern District of New York and elsewhere, as consideration for the receipt of, and as consideration for a promise and an agreement to pay a thing of pecuniary value from the D–Nice Enterprise, and for the purpose of gaining entrance to and maintaining and increasing position in the D–Nice Enterprise, an enterprise which was engaged in racketeering activity, the defendants DARRYL TYLER ... MICHAEL

4

> McMILLAN ... KENNETH WATSON ... DANIEL LUGO ... did knowingly and intentionally conspire to murder members of a rival organization ... in violation of Section 125.25 of the New York Penal Law.

Construing defendant's argument liberally, he appears to contend that second degree murder under New York Law does not qualify as a "crime of violence" under § 924(c). New York Penal Law Section 125.25 defines murder in the second degree. The state statute provides several different ways of committing murder. See Santana-Felix v. Barr, 924 F.3d 51, 56 (2d Cir. 2019).[3]

Post-Davis, several defendants have successfully argued that a conspiracy to commit murder is no longer categorically a crime of violence and therefore no longer a valid predicate for a § 924(c) conviction. See, e.g., United States v. Rodriguez, No. 94-cr-313, 2020 WL 1878112, at *7 (S.D.N.Y. Apr. 15, 2020); Bonilla v. United States, No. 07-cr-97, No. 16-cv-3269, 2020 WL 489573, at *3 (E.D.N.Y. Jan. 29, 2020). This is because conspiracy under § 1959(a)(5) only requires that an agreement be made to commit murder in furtherance of racketeering; it does not have "as an element the use, attempted use, or threatened use of physical force." 18 U.S.C. § 924(c)(3)(A). Put differently, since the minimum criminal conduct necessary for conviction under § 1959(a)(5) does not involve violence, it cannot sustain a conviction under § 924(c). See United States v. Barrett, 937 F.3d 126 (2d Cir. 2019) (finding that conspiracy to commit Hobbs Act Robbery was not categorically a crime of violence).

But as I explained above, Davis and these other cases do not help defendant. In Rodriguez and Bonilla, the defendants moved to vacate their prior convictions under the firearms

---

[3] Subsection one defines murder, for example, as causing the death of another person with the intent to cause the death. See N.Y. Penal Law § 125.25(1). One can also commit murder "under circumstances evincing a depraved indifference to human life" by "recklessly engag[ing] in conduct which creates a grave risk of death to another person, and thereby causes the death of another person," id. § 125.25(2), (4). Lastly, one commits murder if a death results during the commission of certain felonies. See id. § 125.25(3).

statute, 18 U.S.C. § 924(c). Unlike defendant here, Rodriguez and Bonilla were also charged and convicted for carrying a firearm during and in relation to a crime of violence. See Id. at § 924(c)(1)(A). Both courts vacated the defendants' § 924(c) convictions, but otherwise left intact the remaining counts of which they were convicted, including the conspiracy to commit murder count. Here, because defendant was acquitted of the use and discharge of a firearm in Dillard's murder, there is no § 924(c) conviction for me to vacate.

## CONCLUSION

Defendant's motion [568] for habeas corpus relief is therefore denied. As it raises no substantial constitutional issue, a certificate of appealability shall not issue. See 28 U.S.C. § 2253(c). Because an appeal from this Order would not be taken in good faith, *in forma pauperis* status is denied for purposes of an appeal. See Coppedge v. United States, 369 U.S. 438 (1962).

**SO ORDERED.**

                                                                                             U.S.D.J.

Dated: Brooklyn, New York
       September 28, 2020